## The Commonwealth *against* The Cheltenham and Willow-Grove Turnpike Company.

*Philadelphia*, *Thursday*, January 11.

THE fourteenth section of the act to incorporate the Cheltenham and Willow-Grove Turnpike Company, enacts " that if the said company shall neglect to keep the " said road in good and perfect order *for the space of five* " *days*, and information thereof shall be given to any justice " of the peace in the neighbourhood *within the county where* it should distinctly appear in the inquisition that the road has been out of repair five days; and that the part of the road complained of be stated to be in the county in which the justice has jurisdiction.

A *certiorari* by the defendant to remove the proceedings in such a case to this court, does not require a special *allocatur*.

In a proceeding by a justice of the peace &c. against a turnpike company, for permitting their road to be out of repair five days, it is necessary that

1810.

COMMON-
WEALTH
*v.*
WILLOW-
GROVE
TURNPIKE
Co.

" the repair ought to be made, such justice shall issue a pre-
" cept to be directed to any constable, *commanding him to*
" *summon three disinterested persons* to meet at a certain
" time, in the said precept to be mentioned, *at the place in*
" *the said road which shall be complained of,* of which meet-
" ing notice shall be given *to the keeper of the gate or turn-*
" *pike nearest thereto* within the said county; and the said
" justice shall at such time and place, on the oaths or affir-
" mations of the said persons, inquire whether the said road
" or any part thereof is in such good and perfect order and
" repair as aforesaid, and shall cause an inquisition to be
" made under the hands of himself and a majority of the
" said persons; and if the said road shall be found by the
" said inquisition to be out of order and repair, *contrary to the*
" *true intent and meaning of this act,* the said justice shall cer-
" tify and send one copy of the said inquisition to each of the
" keepers of the turnpikes or gates between which such defec-
" tive place shall be, and from thenceforth the tolls hereby
" granted to be collected at such turnpikes or gates shall cease
" to be demanded paid or collected, until the said defective
" part or parts of the said road, shall be put in perfect order
" and repair as aforesaid," &c. *5 St. Laws* 409.

A *certiorari* issued in this case to *Anthony Benezet,* a jus-
tice of the peace of *Montgomery* county, to remove a precept
and inquisition under the foregoing section, by the return of
which it appeared as follows: That on the second of *Sep-
tember* 1809, a certain *Joseph Thomas* gave information
upon oath to *Benezett,* " that the Cheltenham and Willow-
" Grove Turnpike Road, from the top of *Shoemaker's Hill*
" to *Willow-Grove,* was not, and had not been *for five days*
" *past,* generally, in the good and perfect order contemplated
" by the 9th section of the act of assembly entitled &c." The
justice on the same day issued a precept in the name of the
commonwealth, directed to any constable of *Montgomery*
county, reciting the information, and commanding him to
summon " *Thomas Tyson,* lime-burner, of *Abington* town-
" ship, *Israel Michenor* of *Moreland* township, and *John*
" *Fitzwater* of *Upper Dublin* township, to meet on the said
" road, *at the intersection of the Welsh road,* on *Tuesday* the
" fifth day of this month, at 9 o'clock in the forenoon, to
" make an inquisition thereon." On the 5th, " *Joseph*

1810.

COMMON-
WEALTH
v.
WILLOW-
GROVE
TURNPIKE
Co.

" *Thomas* constable made return, and on his qualification " said, he had given notice *to the keeper of the nearest turn-* " *pike gate;*" and on the same day the following inquisition was made. " The commonwealth of *Pennsylvania, Mont-* " *gomery* county ss. An inquisition made on the fifth day of " *September* 1809, before me *A. B.* one of the justices of the " peace in and for the county aforesaid, upon the Chelten- " ham and Willow-Grove Turnpike Road, beginning at " the top of *Shoemaker's Hill,* and extending to *Willow-* " *Grove,* upon the solemn affirmations of *T. T.* lime-burner " of &c., *J. M.* of &c., and *J. F.* of &c., summoned to in- " quire whether the said road, or any part thereof, is in such " good and perfect order and repair as the law directs; who " having viewed and examined the part of said road so de- " scribed, do say, that the following parts of the said road, " viz. from the top of *Shoemaker's Hill* to near the road " leading to *Mather's* mill, also from the flat below *John* " *Livezey's* house to *John Clayton's* house, generally, also " from *Jesse Jenkins'* dwellinghouse to the corner of " *John Kennedy's* meadow, also from the foot of said *Ken-* " *nedy's Hill* to the foot of *Edge Hill,* also from the top of " *Edge Hill* to *John Donnehaur's* house, ARE *not in such* " *good and perfect order and repair*, as is directed by the " ninth section of the Cheltenham and Willow-Grove Turn- " pike law. In witness whereof as well the aforesaid justice " as the jurors aforesaid have hereunto &c." Of this inqui- sition, a copy was certified by the magistrate to have been " sent to *each of the gate-keepers* between which the defec- " tive places were."

*Milnor* and *Hopkinson* for the turnpike company, moved to quash these proceedings upon the following exceptions. *Condy* in support of the inquisition.

1st Exception. The justice in his precept nominates the persons who are to view the road; whereas by the act of assembly, his duty is merely to command the constable to summon three disinterested persons, leaving the nomination of them to the constable.

Answer. The act does not say who shall select the men. But it is to be presumed, that the legislature intended it should be done by the justice, as an officer of greater respectability than the constable.

1810.

COMMON-
WEALTH
v.
WILLOW-
GROVE
TURNPIKE
Co.

2d Exception. It ought to appear how the nearest gate-keeper was notified, and what was the purport of the notice, and the name of the gate-keeper, as well as the number of the gate or other designation. This notice should be strictly set out, because the proceeding is highly penal, and the company is not entitled by law to any other notice. From the magistrate's return it does not appear what notice was given, or whether it was given to the gate-keeper nearest to the place complained of, or nearest the house of the justice. The law requires the former. It ought to have been in writing, and the length of notice should be set forth, that the court may judge whether it was reasonable. This proceeding is in the nature of a conviction by an inferior jurisdiction, and must be taken strictly. *The King* v. *Little* (*a*), 1 *Burn's Just.* 485.

Answer. The act does not require the name of the gate-keeper to be given, because it may not be known. Nor does it require any particular length of notice, or that it should be in writing. It is sufficient that notice was given; and from the whole proceeding it follows necessarily that the notice related to the precept and inquisition, and was given to the gate-keeper nearest the place complained of.

3d Exception. *Joseph Thomas* the constable, being the informer, ought not to have been the officer executing the precept of the justice. He is called upon to name disinterested men, which it is not probable he will do, after having made himself a party; and at all events, it depends upon him whether the company shall have proper notice.

Answer. He is not entitled to select the inquest; his duty is merely ministerial. But if it were otherwise, he has no interest whatever; he neither gains nor loses by the result.

4th Exception. The viewers have not found according to the directions of the act of assembly, that the road had been out of repair for five days last past. In this alone consists the offence, and so it is stated in the information; but the inquisition does not pursue it, and the court will not aid it by intendment. The two cannot be joined together for the pur-

(*a*) 1 *Burr.* 613.

pose of making out the charge. *The King* v. *Fuller* (*a*) is in point that convictions ought to be certain, and not taken upon collection. Upon a conviction for killing fish without the licence or consent of the owner, the want of a licence or consent must appear expressly. *Contra formam statuti* will not answer. *The King* v. *Mallinson* (*b*). In *The King* v. *Corden* (*c*), the court say a tight hand ought to be held over these summary convictions. The only safe rule, is to keep them to the words and spirit of the statute. *The King* v. *Trelawney* (*d*), *Boscawen on Pen. Stat.* 25. 95.

*1810.*

COMMON-
WEALTH
*v.*
WILLOW-
GROVE
TURNPIKE
Co.

Answer. The inquest is required merely to examine the state of the road, at the time of the view, and not in time past. They have no authority to call witnesses for the purpose of ascertaining the prior situation of the road; their duty is as viewers only; and it is their report taken in connexion with the oath made to the magistrate, that leads to the opening of the gates.

5th Exception. Although *Anthony Benezett*, a justice of the peace of the county of *Montgomery*, acted officially in these proceedings, it does not appear on the face of the same, as it ought to do, that the part of the road complained of is within the county of *Montgomery*. Part of the turnpike road is in *Philadelphia* county, and part in *Montgomery;* and the cases cited prove that it is indispensably necessary that the jurisdiction of the justice should appear. *The King* v. *Johnson* (*e*) is in point. *The King* v. *Jeffries* (*f*), *The Queen* v. *Highmore* (*g*), *The King* v. *Tucke* (*h*), *Avery* v. *Hoole* (*i*), *The Mayor* v. *Mason* (*k*).

Answer. The part of the road out of repair, is distinctly stated; and the court will take notice that it is in the county of *Montgomery*. The convictions referred to in the cases cited, wholly omit to state the place of the offence.

6th Exception. The viewers were not sworn or affirmed. (This exception was taken by mistake, as it does appear by the inquisition that they were affirmed.)

7th Exception. It does not appear that the justice com-

| | | |
|---|---|---|
| (*a*) 1 *Ld. Ray.* 509. | (*e*) 1 *Stra.* 261. | (*i*) *Cowp.* 826. |
| (*b*) 2 *Burr.* 679. | (*f*) 1 *D. & E.* 241. | (*k*) 4 *Dall.* 266. |
| (*c*) 4 *Burr.* 2281. | (*g*) 2 *Ld. Ray.* 1220. | |
| (*d*) 1 *D. & E.* 222. | (*h*) 2 *Ld. Ray.* 1387. | |

1810.

COMMON-
WEALTH
v.
WILLOW-
GROVE
TURNPIKE
Co.

plied with the injunctions of the act, in directing the viewers to meet at the place in the said road which had been complained of. The information states the complaint to be of the road between *Shoemaker's Hill* and *Willow-Grove;* and the precept is to meet at the intersection of the *Welsh* road. The law is imperative.

Answer. It is presumable that the justice ordered the viewers to meet at the very place where the road was out of repair; and in fact they did meet there. It must be taken that the intersection of the *Welsh* road is between *Shoemaker's Hill* and *Willow-Grove.*

*Condy* contended further, that this was not a case in which a *certiorari* could issue, at least without a special *allocatur.* The justice did not, nor was he authorized to, render judgment. The only effect of the inquisition was to impose a duty upon the company to repair the road before the next Quarter Sessions; and if they did not, then the proceedings of the inquest were to be sent to the sessions to authorize process against the persons entrusted with the road, in the same manner as against supervisors. It was therefore not in the power of this court to revise the proceedings, until they had been followed by the judgment of the sessions. But if the court could interfere, it should have been done specially. This was a criminal proceeding, and it is discretionary with the court to grant a *certiorari* in such a case. The commonwealth had a right to the writ of course; but the defendant must lay a sufficient ground by affidavit; 1 *Bac. Abr.* 559. *The King* v. *Eaton* (*a*), *The King* v. *Bass* (*b*); and as it had issued here without leave, and to the great inconvenience of the public, as it intercepted the proceeding in the sessions, he therefore moved to quash it.

It was answered that the proceeding was complete upon sending a copy of the inquisition to the gate-keepers, because from that time the right to take toll ceased; and that it was incident to all such jurisdictions to have their proceedings returned into this court by *certiorari* for examination. *Groenvelt* v. *Burwell* (*c*), *The King* v. *Inhabitants in Glamorganshire* (*d*). That by the act of 13th *April* 1791, 3 *St.*

(*a*) 2 *D. & E.* 89.                    (*c*) 1 *Ld. Ray.* 469.
(*b*) 5 *D. & E.* 251.                   (*d*) 1 *Ld. Ray.* 580.

*Laws* 94, a special *allocatur* was necessary to the defendant only when the object was to remove an indictment; but that a *certiorari* to remove such proceedings as these, had always been considered as the defendant's right, at least it had never been the practice to ask it specially.

TILGHMAN C. J. delivered the court's opinion.

A motion has been made to quash the *certiorari*, in as much as it was not specially allowed by this court or any member thereof. It has been urged, that on grounds of public convenience, the *certiorari* ought not to have issued, unless it had previously received a special *allocatur*. Unquestionably this court has a superintending power over its own process, and will see that it is not abused; but we know of no instance wherein an application has been made to the court, or any judge in the vacation, for the allowance of a *certiorari* to remove proceedings before justices of the peace in civil cases. The consequences of the procedure affect materially the rights of the company; and it would be doing them manifest injustice to debar them from the examination of matters touching their immediate interests before a tribunal of limited jurisdiction. We therefore overrule the motion.

No less than seven exceptions have been taken to the proceedings. We do not deem it necessary to give an opinion on all of them, as we are clearly satisfied that two of them at least are fatal.

The inquisition taken before the justice of peace and the three persons summoned to view the road, only finds that on the 2d *September* 1809 when the same was taken, the said road, in different parts thereof, was not in good and perfect order as the law directs; but does not find that it had so continued for the space of five days. This was essentially necessary, under the 14th section of the act of 24th *March* 1803, (5 *St. Laws* 409) which incorporated the company.

Nor does it appear, either in the information made to the justice, his precept, the inquisition, or his record returned, that the parts of the road complained of, as being out of repair, were in the county of *Montgomery*. This also was necessary by the same section of the act. It must clearly ap-

1810.

COMMON-
WEALTH
*v.*
WILLOW-
GROVE
TURNPIKE
Co.

1810.

COMMON-
WEALTH
v.
WILLOW-
GROVE
TURNPIKE
Co.

pear on the face of the proceedings, that the justice of the peace acted within his jurisdiction. The law cases adduced by the counsel of the turnpike company abundantly prove, that these two exceptions are insuperable. We are also strongly inclined to think that the gate-keeper, to whom notice of the inquisition was sent, should have been designated by name, and the number of the gate which he kept, that it might judicially appear that the injunctions of the law had been complied with; but we give no decided opinion on this exception.

We are of opinion for the former reasons, that the proceedings before the justice should be quashed.

Proceedings quashed.